MURRAY v. MENZIES REAL HOMES CO.

1. JOINT ADVENTURES—CONTRACTS—PARTIES—BURDEN OF PROOF.
    In a suit against a corporation for a receivership, injunction, and accounting, based on an alleged oral contract in the nature of a joint adventure, on the issue as to whether said contract was with defendant corporation or individual stockholders, which was in dispute, the burden of proof was on plaintiff.[1]

---

[1]Joint Adventures, 33 C. J. § 95.

2. SAME—EVIDENCE—BURDEN OF PROOF.

> Evidence *held*, to justify the finding of the court below that plaintiff had failed to sustain the burden of proof showing contract relations between himself and defendant corporation.[2]

3. SAME.

> Where plaintiff failed to show by a preponderance of evidence that the contract he relied on was between himself and the named defendant in the case, the decree of the court below dismissing plaintiff's bill is affirmed, on appeal, without prejudice to other proceedings in relation to the transaction shown.[3]

Appeal from Wayne; Murphy (Alfred J.), J. Submitted October 8, 1925. (Docket No. 24.) Decided October 4, 1926.

Bill by Jay H. Murray against the Menzies Real Homes Company for the appointment of a receiver, an injunction, and an accounting. From a decree dismissing the bill, plaintiff appeals. Affirmed.

*Leon Dreifuss*, for plaintiff.

*Miller, Baldwin & Boos*, for defendant.

STEERE, J. Plaintiff filed this bill asking a receivership, injunction and accounting based on an alleged agreement between the parties named in the bill as a joint adventure with defendant. In a subsequent affidavit and his testimony at the hearing he calls it a partnership. Defendant answered issuably directly denying any contractual relations whatever between it and plaintiff. Plaintiff alleges in his bill that on September 6, 1923, he entered into an agreement with defendant—

"to look after the building operations of fifteen (15) buildings which were to be constructed and were con-

---

[2]Joint Adventures, 33 C. J. § 96; [3]Id., 33 C. J. § 98.

structed on lots hereinafter described. upon the following terms and conditions:

"(a) Said plaintiff was to receive a sum of one hundred ($100.00) dollars per week, as a drawing account commencing on September 13th, A. D. 1923, and continuing each week thereafter until the buildings were completed, and was to receive in addition thereto twenty-five (25%) per cent. of the profits, which profits and drawing account should not, in any event, be less than ten thousand ($10,000.00) dollars per year, or on a basis of ten thousand ($10,000.00) dollars per year, and said defendant was to pay said plaintiff his share of profits upon completion and sale of each of said buildings."

He further alleges that he commenced work for defendant on September 6, 1923, and continued to March 4, 1924, when the buildings were finished and his work ended; that the various lots with the buildings constructed under his management were sold by defendant, but although he called upon defendant "at least a dozen times and asked for an accounting and for his division of the proceeds" defendant refused him, ignoring his "rights and demands in said matter," to secure which he filed this bill.

Upon the trial it was shown without dispute that defendant Menzies Real Homes Company was a corporation which had been engaged in the real estate business in Detroit for a number of years, buying, selling, leasing, and at times building upon its property, for lease or sale. At the time of the transaction involved here it owned and was managing a valuable quantity of unimproved and improved real estate in various parts of Detroit. It had some stores on Livernois avenue, a garage property on Cass avenue rented to the General Motors Company for $18,000 a year, one piece of its property on Cass avenue alone being appraised at between $300,000 and $400,000.

H. D. Menzies is defendant's president and Leslie J. Menzies its secretary. They own most of its stock

and manage its business.    It was their claim that the corporation had ceased its building activities as such about 1921, and since then had confined itself to collecting its rents, reinvestments, and management of its property, although they two had at times since then, as individuals or under separate companies, engaged in some building projects, and the contract or joint venture involved here was entirely with them personally, of which plaintiff was fully advised from the beginning.

Following the hearing the trial court found that the contract on which plaintiff's bill was based was with H. D. Menzies and Leslie J. Menzies personally and not with the defendant corporation which he had sued, and entered a decree dismissing his bill, with costs to defendant, but prior to the decree an opinion was filed discussing the salient issues raised at the hearing, in which the court not only held there were no contractual relations between plaintiff and defendant but found the contract or joint adventure between him and the Menzies was financed by H. D. Menzies with the credit or assistance of defendant, to protect which, title to the lots upon which the buildings were erected was held in defendant's name—

"by virtue of a trust relation for the benefit of the plaintiff and the other two individuals involved.   And it was the understanding of these three individuals that when necessary to convey titles to the lots acquired, they would be conveyed by its officers, the two Messrs. Menzies, to any appropriate grantee, or vendee, at the actual cost price to the defendant corporation of the lots."

The court also found the contract different in certain material particulars from plaintiff's contention; that some of the houses and lots had not yet been sold and contracts with small payments down under which others had been sold were doubtful assets for their determining profits; and held in substance that in any

aspect of the transaction plaintiff's demand for an accounting was premature.

The controlling and final question in the case as decided by the trial court was whether the contract, whatever its terms or significance, was between plaintiff and the defendant corporation. On that question, the burden of proof was on plaintiff. If the court rightly held that he failed to sustain it by a preponderance of evidence and no contract relations were shown between the parties to the suit, that ended the case. What further was said in the court's opinion is upon points not necessarily involved in the determination of the cause and but *obiter dictum,* which calls for no review of the arguments of counsel in relation to it.

The contract was concededly oral and the only parties present at its making were plaintiff and the two Menzies. Plaintiff testified it was with the corporation through them acting as its officers. This they specifically denied, claiming it was distinctly with them personally and plaintiff was fully informed of the fact at that time. Assuming all three equally creditable, upon that direct contradiction he failed to sustain the burden of proof; but a comparison of his testimony and theirs as to disputed and undisputed facts makes their story more convincing and persuasive.

The undisputed testimony shows that prior to this time the two Menzies had personally made a similar contract of partnership or joint adventure with an architect named Harry C. Vicary. He proved to be an office man without the experience and capacity to profitably and efficiently handle the actual work of construction and their agreement with him, which was in writing, was ended by an amicable adjustment before the number of houses intended had been built. This contract, which was produced in evidence at the hearing, is brief and graphic, made directly between H. D. Menzies and Leslie J. Menzies, and Harry C.

Vicary "for the purpose of building and selling houses." By it H. D. Menzies was to furnish the necessary capital and "devote some time to the enterprise," while Vicary and Leslie J. Menzies were to devote their entire time and energy to the project. Each party was to draw $300 per month as salary to be charged directly as overhead to the cost of the houses with other expenses such as office rent, heat, light, stationery, clerical help, discount of contracts, etc. The ultimate profits, if any, after all expenses had been taken into consideration, were to be divided as follows:

"H. D. Menzies, 50 per cent.; L. J. Menzies, 25 per cent.; H. C. Vicary, 25 per cent."

Plaintiff was known as a practical builder with years of experience and about that time had no building projects on hand. The Menzies communicated with him and made arrangements for him to take charge of and continue the work. Their testimony is that when negotiations were opened with him they fully explained the situation and showed him the written contract with Vicary, proposing that he take charge of and manage the work under a similar agreement.

Plaintiff squarely denies their having shown or told him of this contract, although he admits he learned of Vicary doing work of that kind before him and that in performing his contract he constructed buildings on basements already dug or partly dug by some one but he did not know by whom. It is conceded that in their negotiations he declined to enter into the project on the monthly drawing account of $300 which they proposed but insisted on more, and they finally agreed upon $400 a month. He also adds to the contract as stated by him in his bill of complaint that it was agreed the land contracts should be discounted at a flat rate of 15 per cent. This, according to the testimony, is made highly improbable by proof of the difficulty of discounting contracts sold on small pay-

ments down and long time deferred payments; as is also his claim of a guaranty to him of $10,000 a year in a venture of this kind in which he only invested his services, for which he was sure of $100 per week whether the venture proved profitable or entailed a loss to his co-adventurers, and which the Menzies say they first heard of when his bill was filed.   Their testimony is also in direct conflict as to what was said with regard to the contract being in writing.   Plaintiff was asked and answered:

"*Q.* Was that agreement to be in writing?
"*A.* Yes, sir.
"*Q.* And to be written by whom, and who were to be the parties to it?
"*A.* The Menzies Real Homes Company and the parties were to be H. D. Menzies, Leslie Menzies and Jay H. Murray.
"*Q.* Thereafter did you ask them for a written agreement, to be put in writing?
"*A.* Yes, sir."

This is also flatly denied by the Menzies.   H. D. Menzies testified that in a subsequent talk about it he proposed to give plaintiff a letter on the subject "so we will understand just where we stand," and he replied it was not necessary, "we understand one another."   Plaintiff was a building contractor, had himself engaged in building houses to sell, was experienced in the cost and uncertainties of such enterprises, said he knew what he was getting into, and "was not a babe in the woods."   He claimed total ignorance of matters in connection with this transaction which taxes credulity.   His testimony was self-contradictory and reckless in parts.   We find no occasion to disturb the conclusion reached by the court below that plaintiff failed to show by a preponderance of convincing evidence that the contract he relied on was between him and the named defendant in this case.

Without prejudice to other or different proceedings in relation to the transaction shown, the decree dismissing plaintiff's bill will stand affirmed, with costs to defendant.

Bird, C. J., and Sharpe, Fellows, Wiest, Clark, and McDonald, JJ., concurred.

Justice Moore took no part in this decision.